IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PLACID OIL LLC, f/k/a PLACID OIL COMPANY,** | § § § | |
| Appellant, | § § | |
| v. | § § | Civil Action No. **3:22-CV-1560-L** |
| **AVALON FARMS, INC.,** | § § § | |
| Appellee. | § | |

# MEMORANDUM OPINION AND ORDER

Appellant Placid Oil LLC, f/k/a Placid Oil Company ("Placid" or "Appellant") filed this appeal on October 11, 2022, to appeal The United States Bankruptcy Court for the Northern District of Texas, Adversary Case No. 20-03149-sgj (the "Bankruptcy Case"), Memorandum Opinion and Order (the "Bankruptcy Order") (Doc. 3-1 at 19), issued June 3, 2022, and Judgment (Doc. 3-1 at 49), issued June 29, 2022. After careful consideration of the briefs, record on appeal, and applicable law, the court **affirms** the Bankruptcy Order and Judgment, and **dismisses with prejudice** this appeal.

**I.     Background**

Placid is an oil company and a former Chapter 11 debtor in the Bankruptcy Case. Appellant's Br. 10 (Doc. 6). Avalon owns a 20-acre parcel of land in St. Mary Parish, Louisiana (the "20-Acre Parcel"), where Placid previously operated a gas-processing plant. *Id.* This Appeal concerns whether Avalon's claims against Placid for alleged environmental contamination and remediation by Placid's gas-processing plant were discharged in the Bankruptcy Case. According to Placid, the Bankruptcy Court "erred, in holding that Avalon's claims, if any, regarding the 20-Acre Parcel, were not discharged in the Bankruptcy Case." *Id.*

On October 12, 1962, Avalon's predecessor-in-interest, Mrs. Ara Bateman Zenor ("Zenor"),* leased to Ernest Cockrell, Jr. ("Cockrell") various property rights and parcels of land, including the 20-Acre Parcel and right to construct and operate a gas-processing plant on the 20-Acre Parcel (the "Surface Lease"). Record, Vol. 28, 5052-56 (Surface Lease) (Doc. 2-29 at 238-42). Subsequently, on June 10, 1965, Cockrell and Placid entered into an agreement (the "1965 Agreement") wherein Cockrell conveyed to Placid a 50% interest in the Surface Lease. Record, Vol. 29, 5057-59 (Assignment of Interest in Leases and Right of Way) (Doc. 2-29 at 243-45). Following the execution of the 1965 Agreement, Placid developed its gas-processing plant on the 20-Acre Parcel and operated it from June 1965 until March 1991. Appellant's Br. 6. In 1985, after Cockrell passed away, Cockrell's successors sold their interest in the Surface Lease to Penzoil. Doc. 2-29 at 243-45

In 1986, Placid filed the underlying Bankruptcy Case. *See* Mini Record, Vol. 1, 6 (Bankruptcy Order 2) (hereinafter "Bankruptcy Order [pin cite]") (Doc. 3-1 at 19). The "Bar Date" for potential creditors to file prepetition claims was set for January 31, 1987. *Id.* at 11. Due to the size of Placid's operations, Placid had several potentially unknown creditors; thus, in January 1987, Placid published the Notice of Bar Date in three separate issues of the *Wall Street Journal* (the "Publication Notices"), a newspaper of national circulation that was available in Louisiana. *Id.* In addition, Placid provided actual notice to Cockrell and Penzoil; however, "[i]t is undisputed that [Avalon] did not receive ***actual*** notice of the Bankruptcy Case and did not file a proof of claim or otherwise participate in the Bankruptcy Case." *Id.*

On September 30, 1988, Placid confirmed its Plan. *Id.* at 7. The Order confirming the Plan (the "Confirmation Order") provided that: "all claims against Placid that arose on or before

---

* For clarity purposes, when referring to Avalon's predecessor-in-interest, Mrs. Zenor, the court states "Zenor," for all other predecessors-in-interest of Avalon, the court states "Avalon."

**Memorandum Opinion and Order - Page 2**

September 30, 1988 (the confirmation date), were forever discharged except for the Reorganized Debtor's obligations under the Plan (the "Discharge")." *Id.* The Confirmation Order also prohibited claimants from suing the Reorganized Debtor for claims that were discharged against Placid. *Id.*

Almost 31 years later, on July 19, 2019, Avalon sued Placid in the 16th Judicial District Court for the Parish of St. Mary, Louisiana, alleging that Placid's gas-processing plant on the 20-Acre Property contaminated its land in violation to the Surface Lease. *Id.* at 15. In response, Placid initiated the underlying adversary case against Avalon, wherein Placid requested the Bankruptcy Court to determine that Avalon's claims were discharged in the Confirmation Order. *Id.* Conversely, Avalon requested an order declaring that its claims related to the Surface Lease were not discharged due to its lack of actual notice of the Bankruptcy Case. *See id.* The parties filed cross motions for summary judgment, seeking their respective opposite rulings.

In Placid's Motion for Summary Judgment ("Placid's Motion"), it argued that the 1965 Agreement was nothing more than a sublease of the Surface Lease. *See* Appellant's Br. 24. As such, Placid contended that the 1965 Agreement did not create any interest on its behalf. *Id.* Therefore, according to Placid, it had no requirement to give notice to Avalon during its bankruptcy proceedings. *Id.* Conversely, in Avalon's Motion for Summary Judgement ("Avalon's Motion"), it argued that Placid was a counterparty to the Surface Lease; therefore, Avalon was entitled to actual notice. Appellee's Br. 1. Avalon asserted that, at the time the Bankruptcy Case was filed, Zenor was Placid's Lessor on the Surface Lease, which was an unexpired lease of real property. *Id.* Therefore, Avalon argued that its claims could not have been discharged because it never received the required actual notice of Placid's intent to assume the lease or any underlines

**Memorandum Opinion and Order - Page 3**

thereafter. *Id.* at 7. The Bankruptcy Court agreed with Avalon, granted Avalon's Motion, denied Placid's Motion, and entered judgment in favor of Avalon.

On appeal, Placid raises the following issues:

1. Whether the Bankruptcy Court erred in granting [Avalon's Motion] and in denying [Placid's Motion];

2. Whether the Bankruptcy Court erred in determining that Avalon's claims against Placid, if any, relating to 20-Acre Parcel in St. Mary Parish, Louisiana were not discharged in the Bankruptcy Case;

3. Whether the Bankruptcy Court erred in concluding as a matter of law that the 1965 Agreement was a true assignment of an interest in a lease rather than a sublease, under applicable Louisiana law and that no genuine issue of material fact existed regarding whether the 1965 Agreement was a true assignment of an interest in a lease rather than a sublease, under applicable Louisiana law;

4. Whether the Bankruptcy Court erred in determining as a matter of law or fact that Avalon was a known creditor to Placid;

5. Whether the Bankruptcy Court erred in determining as a matter of law or fact that contractual privity between Placid and Avalon, if it existed, necessarily made Avalon a known creditor to Placid, or that an examination of that issue "misses the point";

6. Whether the Bankruptcy Court erred in determining that the Notice of Bar Date, published three (3) times in *The Wall Street Journal,* was not sufficient notice to Avalon with respect to its claims, if any, against Placid relating to the 20-Acre Parcel;

7. Whether the Bankruptcy Court erred in determining that a landlord-tenant relationship knowingly or unknowingly existed between Placid and Avalon, as a result of the 1965 Agreement;

8. Whether the Bankruptcy Court erred in determining that an alleged surface lease between Placid and Avalon, created by the 1965 Agreement, "rode through" the Bankruptcy Case;

9. Whether the Bankruptcy Court erred in not determining either as a matter of law or fact that Avalon's claims against Placid, if any, were pre-petition claims, or pre-confirmation claims that were subject to the Discharge and Discharge Injunction; and

> 10. Whether the Bankruptcy Court erred in not finding that Avalon had failed to raise a genuine issue of material fact as to the existence of any claims against Placid that arose after September 30, 1988.

Appellant's Br. 8.

## II.     Standard of Review

In a bankruptcy appeal, the district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003). A bankruptcy court's findings of fact are "clearly erroneous" only if, "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Duncan*, 562 F.3d 688, 694 (5th Cir. 2009) (quoting *In re Dennis*, 330 F.3d at 701)).

## III.    Analysis

In essence, Placid's numerous issues relate to the Bankruptcy Court's finding that the 1965 Agreement was an assignment, not a sublease. Placid contends that the 1965 Agreement is a sublease because: (1) Cockrell retained certain interest and control of the Surface Lease under the terms of the 1965 Agreement; (2) the 1965 Agreement imposed additional duties on Placid not contained in the Surface Lease; and (3) the 1965 Agreement did not grant Placid all the rights that Cockrell had in the Surface Lease. Appellant's Br. 28. Placid contends that the obligations and duties between the parties flowed solely between Cockrell and Placid, and not between Placid and Zenor, with whom it had no contractual relationship. *Id.* at 29. It also contends that Cockrell maintained the reversionary right to terminate their agreement and retake possession of the leasehold premises, *id.*, although Placid does not cite to the record or controlling case law for this assertion. *See id.*

Whether the 1965 Agreement is an assignment or a sublease is governed by Louisiana law. Under Louisiana law, a court must use the clear and explicit language of a contract and delve no

further to interpret it to determine the intent of the parties. *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 440 (5th Cir. 2002). Although the 1965 Agreement is titled "Assignment of Interest in Leases and Right of Way," and the document uses the terms "Assignor" and "Assignee" to describe Cockrell and Placid, respectively, the court will examine it further to analyze the character of the document. *See Hoover Tree Farm, L.L.C. v. Goodrich Petrol. Co.*, 63 So. 3d 159 (La. 2011) (citing *Smith v. Sun Oil Co.*, 116 So. 379, 380 (La. 1928)).

"The jurisprudence of [Louisiana] is well settled that the distinction between an assignment on the one hand and a sublease on the other is that in an assignment[,] the original lessee transfers all of his rights in the lease; whereas in a sublease[,] he retains some control or interest in it." *Bond v. Midstates Oil Corp.*, 53 So. 2d 149, 153 (La. 1951); *see also Pinnacle Operating Co., v. Ettco Enters., Inc.*, 914 So. 2d 1144, 1146 n.4 (La. Ct. App. 2005). "The retention of an overriding royalty and the imposition of obligations under the penalty of reversion had the effect of making the lease a sublease and not an assignment." *Bond*, 53 So. 2d at 153 (citing *Smith*, 116 So. at 380); *see also Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1160 n.15 (5th Cir. 1993).

> The distinction between an assignment of a lease and a sublease is that, in an assignment, the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleased-by imposing some obligation upon the sublessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor.

*Roberson v. Pioneer Gas Co.*, 137 So. 46, 48 (La. 1931); *see also Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.*, 252 So. 3d 431, 438 (La. 2018); *Del-Ray Oil & Gas, Inc. v. Henderson Petroleum Corp.*, 797 F.2d 1313, 1316 (5th Cir. 1986).

In other words, the primary facts that determine whether an agreement is an assignment, or a sublease, is the retention of an interest in the property, the "imposition of obligations under penalty of revision," and payment of rent in some form. *Prestridge v. Humble Oil & Ref. Co.*, 131

So. 2d 810, 823 (La. Ct. App. 1961) (citing *Smith*, 116 So. at 380); *see also Roberson*, 137 So. at 48.

The 1965 Agreement appears to assign "an undivided one-half 1/2 of Assignor's right, title, and interest in and to the" the Surface Lease. Doc. 2-29 at 243. The 1965 Agreement also provides that "[t]his Assignment is subject to the terms, conditions, and provisions of the aforementioned leases" and right-of-way easement grant, referring to the Surface Lease. Doc. 2-29 at 243-45. The 1965 Agreement further mandates that if at any time either the Assignor or the Assignee does not elect to maintain his or its interest in either of said leases, such party must first give the other an opportunity to obtain reassignment of the interest. *Id.* This provision essentially grants equally a right of first refusal to both parties. This is contrary to a reversion interest in a sublease, in which the retention of rights is not shared equally, but with the Assignor retaining the rights against the Assignee. Doc. 2-29 at 243; *see Bond*, 53 So. 2d at 153.

As for the payment of rent, the Agreement again splits responsibility between both parties equally. It provides that "the amounts paid by signor shall be borne by a signor and a signee in proportion to their ownership." Doc. 2-29 at 244. Under these facts, the court determines that the 1965 Agreement is an assignment, as it conveys "an undivided" portion of Cockrell's rights, provides both parties equally with a first right of refusal, and divides rent obligations equally, which is consistent with joint ownership. The rent provision further divides the interest between Cockrell and Placid based on their respective ownership in the Surface Lease, consistent with joint ownership. Because the 1965 Agreement was an assignment, Placid was a party to the Surface Lease, Placid was a direct tenant of Avalon, and Placid had contractual privity with the underlying landowners.

Moreover, it is undisputed that the parties to the 1965 Agreement explicitly acknowledged the Surface Lease and its parties. This acknowledgment forecloses Placid's alternative argument that Avalon was an "unknown creditor" or that Placid was unaware of the contractual privity, even if the 1965 Agreement was an assignment, because that agreement created an "accidental landlord-tenant" relationship between it and Avalon. Further, even if the court concluded that Avalon was an "unknown creditor"—which it does not—Placid's notice by publication was insufficient, as Placid failed to publish notice of the Plan and the Order Confirming the Plan, "which prevented [Avalon] from receiving constructive notice of various deadlines germane to it—i.e., deadlines for objecting to assumption of its agreements or a cure amount associated with its agreements." Bankruptcy Order 30.

Accordingly, for these reasons and those set forth in the Bankruptcy Court Order, the court concludes that the 1965 Agreement was an assignment. The assignment created a contractual relationship between Zenor (the original Lessor of the surface Lease) and Placid; therefore, Placid was required to provide *actual* notice of its Bankruptcy Case to Zenor. As noted, it is undisputed that Zenor did not receive actual notice. Placid's failure to provide actual notice to Zenor prevented any of her claims from being discharged. Hence, Avalon, standing in Zenor's place as her successor, did not have its claims discharged in the Bankruptcy Case. Further, resolution of this issue resolves or moots all remaining issues raised in this appeal.

## IV.   Conclusion

For the reasons specified herein, the court **affirms** the Bankruptcy Court's Order denying Placid's Motion and granting Avalon's Motion (Doc. 3-1 at 19); **affirms** the Bankruptcy Court's Judgment (Doc 3-1 at 49) in favor of Avalon; and **dismisses with prejudice** this appeal. The court

directs the clerk of court to prepare, sign, and enter judgment in accordance with this Memorandum Opinion and Order pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure.

**It is so ordered** this 3rd day of October 2023.

*[Signature: Sam A. Lindsay]*

Sam A. Lindsay
United States District Judge